Marshall, C. J.,
dissenting. I dissent from the majority opinion of the court upon the conclusions reached upon the third question therein propounded, to-wit:
“Has the court the power to increase the annual allowance made by the testator to each of his children, because of the fact that the circumstances of certain of such children and general conditions hav-e changed since the death of testator?”
While I disagree with the conclusion of the majority on this question, I heartily agree with the court’s conclusion upon the second question propounded, to-wit: That the estate vested in each and all of the children at the death of the testator.
The lower courts have found the existence of an unforeseen exigency, and this seems to be admitted in the briefs of counsel for the trustees. This court under the established rules should take this fact as established, and not weigh the evidence to determine the acuteness of the needs of the applicants. Taking this finding of fact in connection with the conclusion that the estate did vest at the death of the testator, it is unsound, illogical and inequitable to deny the application of the beneficiaries for an increased allowance.
By reference to the will, it will be found that the first five items of the will make provision for the widow and for certain other minor legacies, and that the bulk of the estate is disposed of in item six of the will. In this item it will be found* that *209 certain restrictions were made upon expenditure of the income during the period of ten years immediately following the death of the testator; but that at the end of the ten-year period there was to be complete distribution among the children, and this distribution was not in any sense contingent.
Each of the seven surviving children became the legal owner of the undivided one-seventh of the corpus of the estate at. the death of the testator, although possession was .to be withheld for the period of ten years. This conclusion is emphasized by the requirement in item six that an appraisement of all property be made immediately after the death of the testator and that the valuations of that date' fixed by the appraisers should be the basis of distribution in kind, though the actual distribution should take place ten years later.
Item six forbids the trustees from recognizing any alienation of income, and does not permit the trustees to recognize any .orders anticipating allowances made to each of his children respectively; but no such limitation, and no restriction whatever, was placed upon alienation of the respective interests of the children in the corpus of the estate.
Having exercised peculiar care to prevent the children from anticipating the yearly allowances, and having placed no limitation upon alienation of their interests in the corpus, and both provisions having been contained in the same item of the will, it will be presumed that it was the deliberate design of the testator to leave the corpus untrammeled *210 against alienation, and subject to execution to satisfy the claims of creditors of the beneficiaries.
The record in this case leaves no doubt upon the following propositions of law and fact:
1. The estate vested in the children upon the death of the testator.
2. An unforeseen exigency has arisen since the death of the testator. This is admitted in the brief filed by counsel for the trustees.
3. The application for an increased allowance does not seek an enlargement of the quantum of the interest of any of the beneficiaries.
4. The granting of the application and the making of an increased allowance to any beneficiary would not affect the right of any other beneficiary under the will.
5. It would not change the course of the descent nor would it affect final distribution of the estate.
6. The $6,000 annual allowance was at the time the court of appeals made its order by no means as large a percentage of the income due each beneficiary as $2,500 was at the time of the execution of the will.
7. The order of the court of appeals now being reversed by this court itself provided that it should be subject to modification upon changed conditions.
8. ' The will made provision against'alienation of income, but gave a vested interest in the corpus, thereby making it clearly subject to alienation, and also making it subject to execution and sale at suit of creditors of the beneficiaries.
Taking the foregoing statements as the basis of discussion, it is impossible to justify the conclusions *211 reached in the majority opinion. It is stated in the majority opinion that it is presumed that the testator in distributing his bounty by last will and testament takes into -consideration his affection for and obligation to the beneficiaries — the beneficiaries’ needs, ability, capacity, and other things of which he has peculiar knowledge; and that because of such considerations he makes his last will and testament.
Again, in the court’s opinion, the inquiry is made as to whether a court may amend a will because in its opinion some other disposition would have been more beneficial to the legatee. Again, the question is propounded as to what argument can be advanced in favor of the thwarting of the will of the testator in favor of the needy legatee that cannot with equal force be urged with reference to the needy heir under the law of descent and distribution.
Each and all of these statements of the court make it evident that its conclusion was reached under the mistaken notion that it is sought to change the will of Franklin Alter. The order made by the court of appeals in this case did not make any change in the will. The court of appeals reached the same conclusion as this court upon the proposition that the estate was given absolutely to the children, and that their respective interests vested at the death of the testator, and that the provisions of the will forbidding anticipation and alienation applied only to the income..
The will clearly provided that each’of the children should be guaranteed an annual income of *212 $2,500, and every precaution was taken to safeguard such income for the full period of ten years. It further provided that all income in excess of such annual payments to the beneficiaries should augment the principal of the estate and thereby become a part of the vested interest of the beneficiaries. It is now sought to relieve the distress of the beneficiaries, which distress has had- its inception since the death of the testator, and which was not known to the testator, and which could not reasonably have been foreseen, by ordering the trustees to pay to certain of the beneficiaries certain .additional sums of money during such time as the estate shall continue to earn sums largely in excess of the earnings at the time of the testator’s death.
The record discloses that at the time of the execution of the will the annual earnings of the estate were approximately the amount ordered to be paid annually in the aggregate to the beneficiaries. It further appears that in the year 19,17 the net annual earnings were approximately ten times that amount. The additional payments could therefore be made not only without impairing the principal, but' even without seriously affecting the income. Since it is admitted by this court that the interest of the beneficiaries vested, it can upon no theory justify its declarations that the order of the court of appeals amounts to an amendment of the will, or that it is a change in the manner of the final distribution of the estate.
The méárüng and purpose of the will of Franklin Alter must be-gathered from a reading of all its provisions, and not merely from a consideration of *213 one clause of item 6. It is true that in item 6 certain restrictions were placed upon distribution of income, but the purpose of the testator is equally clear that the principal was not to be disturbed or permitted to be sold or dissipated, during the ten-yearperiod, otherwise no means would be available for producing the necessary revenue to pay the $2,500 annuities. It is important to conserve the corpus of the estate in order to carry out the purposes of the testator, and if, as found by the majority opinion, the corpus is vested, and therefore subject to sale or alienation, the entire purpose and plan of the testator is in danger of being defeated unless equity comes .to the rescue.
By placing limitations upon the payments to the beneficiaries, whereby such payments have proved insufficient to provide the necessities of life, and at the same time having left the principal to them in such' manner as to vest at the testator’s death, thereby placing them at the mercy of their creditors, the court of equity is at the parting of the ways, and must either give the beneficiaries an additional portion of the increased income or stand by impotently and see the principal dissipated by an execution sale. The increased income which is in excess of the stipulated annuities is each year added to the vested principal and such excess therefore becomes subject to sale. May a court of equity not order the payment to be made out of such excess' when it is admitted that a court of law may render judgment and order an execution upon the entire principal including that portion thus added?
*214 The majority opinion states:
“In extreme cases, in England, as well as in certain jurisdictions in America, the courts, under the guise of doing what the court imagines the testator would have done had he foreseen the situation, have gone a long way toward the substitution of the will of the court for that of the testator; but no such invasion of the rig'ht of the testator has been made in Ohio.” .
Concerning this statement I have two observations to make:
1st. That in none of the cases cited and discussed by counsel for the beneficiaries has the will of the court been substituted for that of the testator. In each and all of those cases, the will of the testator was carefully observed. The orders made by the courts in those cases were in furtherance of the real intent of the testator as expressed in his will, and were made to prevent the intention of the testator from being frustrated and to prevent the purposes of the trust from being defeated.
2d. The above-quoted statement contains an absolutely erroneous conception of the principles of’ equity. In each and all of the cases under discussion the courts proceeded under jurisdiction of equity, and strictly along well-recognized equitable principles. It is absurd to say that the principles .of equity in Ohio are different from the established principles of equity in other states of the Union,- or even in England.
Equitable principles are not based upon the whim of the chancellor, in which each case may be *215 decided according to the views of the individual judge; neither are they to be influenced by his conscience or governed by his interpretation of good morals. On the contrary, equity is a separate system of jurisprudence, having fixed precedents and principles, and when such precedents and principles have become uniformly established in .certain states and jurisdictions it is exceedingly unfortunate for a court of one state, which has not yet passed upon such principles, to choose to stand apart and treat such principles and precedents as the product of a foreign jurisdiction, entitled to no respect.
It is well recognized, and cannot be seriously.disputed, that equity has peculiar jurisdiction over trusts. A trustee without the aid of equity must follow the strict letter of the instrument whereby the trust is created; but it frequently happens that it is either impossible or grossly inequitable to thus strictly follow it, and in such event recourse may be had to equity to grant relief. It is not the purpose of such relief to entirely change the purposes of the trust, but to carry out their spirit and general purpose. If a court of equity does not have such power, then it may be inquired what possible power equity has over trusts.
To what purpose are trust estates placed, under the jurisdiction and control of courts of chancery if an unyielding enforcement of the strict letter of the trust is to be the rule, and the spirit of the trust is to receive no consideration in the light of new exigencies which have arisen and which could not reasonably have been foreseen ? If a strict admin *216 istration and a rigid adherence to the letter rather than to the spirit of the trust is to be the invariable rule in trusteeships, then the entire subject should be remanded to courts of law.'
Equitable estates and equitable interests have their origin in trusts. It is only in trusteeships that there is any division between the legal and equitable estates, and it is only in courts of equity that such equitable interests can be recognized and enforced.
It is unfortunate indeed if it is to become a settled law of Ohio that tnist estates are to be administered according to their strict letter, and no deviation is to be permitted even in cases where it is admitted that exigencies have arisen which are likely to be destructive of the very existence of the trust. This is not painting it too strongly in the instant case. Having declared that the interest of each of the beneficiaries has become vested upon the death of the testator, and it appearing that thé beneficiaries have become involved in debt through misfortunes, nothing can prevent creditors from subjecting the vested equitable interest of the beneficiaries in the corpus of this estate to execution and sale to satisfy their claims. True, possession under any such sale could only be given at the end of the ten-year period. This would mean that the' interest of such beneficiary would be sold at a great sacrifice.
On the other hand, we will suppose that the beneficiaries, desiring to prevent a sacrifice sale upon execution, shall decide to sell their interests in the corpus of the estate, possession^ be given at the *217 end of the ten-year period. The decision of this court throws such a cloud upon the title that such a sale could only be made at a great sacrifice.
The testator has already declared that the trust was for the benefit and advantage, of the beneficiaries, all of whom are his own flesh and blood, and it is inconceivable that the testator meant that the corpus of the estate should be sacrificed by adhering to the strict letter of the trust rather than yielding an additional portion of the income to the needy beneficiaries, thereby causing a sacrificial sale of a portion or all of the corpus rather than saving to them an unimpaired principal at the end of the trust period.
Courts in other jurisdictions have looked to the general scheme of the testator, and have executed the trust in such manner as to carry out his intention, as gathered from the entire instrument.
These beneficiaries are the children of the testator, and have all been, treated exactly alike, and have been given the entire estate, subject to no contingencies whatever, only deferring its full enjoyment for a period of ten years.
Can it therefore be said that his intention, gathered from the entire scope of item 6 of the will, was that he preferred to have the principal of the estate sacrificed at the suit of creditors rather than to yield a small portion of the extra income, when such extra income in some years was from five to ten times as much as it was at the time the testator made his will?-
Johnson, J., concurs in dissenting opinion.